# CASES DECIDED

IN THE

# Supreme Court of Georgia.

## OCTOBER TERM, 1892.

### THOMAS *v.* THE STATE.

1. As criminal cases are by the act of September 7th, 1891, subjected, in respect to the time for signing and certifying the bill of exceptions, to the practice relating to bills of exceptions in cases of injunction, the overruling of a demurrer to a bill of indictment, unless excepted to *pendente lite*, cannot be reviewed on a bill of exceptions bringing the case to this court, signed and certified within twenty days after final judgment overruling a motion for a new trial, but not within twenty days after the decision on the demurrer.

2. Counsel in discussing the credibility of a witness to the jury, may refer to the witness as a person of bad character, where there is evidence to that effect.

3. A juror may take notes of amounts testified to by a witness. *Tift* v. *Towns*, 63 *Ga.* 237; *Lilly* v. *Griffin*, 71 *Ga.* 535. There is no law to prohibit a juror from taking notes of any of the evidence.

4. It is not error for the court to enumerate acts constituting the essentials of the offence and to instruct the jury that if they find these acts are established, they would be authorized to find the defendant guilty. *Kitchens* v. *The State*, 41 *Ga.* 217; *Pennaman* v. *The State*, 58 *Ga.* 336; *Hill* v. *The State*, 63 *Ga.* 578; *Wilson* v. *The State*, 67 *Ga.* 660, 661; *Kinnebrew* v. *The State*, 80 *Ga.* 236.

5. The offence of cheating and swindling may be committed by a false representation of a past or existing fact, although a promise be also a part of the inducement to the person defrauded to part with his property. A verdict of guilty was not contrary to law and the evidence, there being evidence sufficient to sustain the allegations of the accusation to the effect that the defendant induced the prosecutor to exchange to a confederate of the defendant a certain pair of mules, a wagon and a set of harness, worth $200, for two horses and a mare of greatly inferior value, upon

the faith of the defendant's representation that he had already sold the horses to a certain other person for $275, to be paid as soon as they were delivered, and out of which money the prosecutor, if the trade should be made, would get $200, the defendant to take for himself $75 and the mare, this representation being untrue and made to the prosecutor for the purpose of cheating and swindling him.

October 8, 1892

Practice. Exception. Argument. Juror. Charge. Criminal law. Cheating. Before Judge WESTMORELAND. Criminal court of Atlanta. May term, 1892.

Conviction of cheating and swindling. The exceptions are, to the overruling of a demurrer to the accusation, and of a motion for new trial. The demurrer was overruled on May 4, and there was no exception *pendente lite.* The motion for a new trial was overruled on May 31, and the bill of exceptions was certified on June 15. The grounds of the demurrer are covered by what is said in the fifth part of the decision. In addition to the general grounds for new trial, it was alleged that the court erred in allowing the State's solicitor to refer to a witness for the defendant as a woman of bad character, while discussing her credibility as a witness, defendant's counsel objecting because she had not been legally impeached. The State had introduced a witness to impeach her, and he testified that her character was bad, but he could not say he would not believe her on oath. Other grounds for new trial were, that a juror took notes of amounts given in the testimony; and that the court erred in charging the jury that they would be authorized to find the defendant guilty if they believed from the evidence that he did and said certain things enumerated, whereas it is contended that such facts might only authorize an inference of guilt in the absence of evidence rebutting such inference.

R. J. JORDAN, for plaintiff in error.

L. W. THOMAS, solicitor, *contra.*

SIMMONS, Justice.

The accusation was preferred by George W. Miller, and charged the defendant, Albert Thomas, with the offence of misdemeanor, in "using deceitful means and artful practices by which said George W. Miller was defrauded and cheated of a certain pair of mules, one wagon and a double set of harness, of the value of two hundred dollars; for that . . . . on the day and date aforesaid . . . in the county of Fulton aforesaid, the said Albert Thomas approached the said George W. Miller for the purpose of purchasing the property aforesaid and which the said George W. Miller wished to sell. The said Albert Thomas said to George W. Miller that he knew a lady who had two gray horses which were worth $650, and one gray mare, and she wanted to exchange them for a pair of mules which she wanted on her farm out in the country, and that he had the pair of gray horses already sold to Walker for $275, who wanted them for carriage horses; the said Albert Thomas at the same time pointing in the direction of the well known livery and sale stables of Hill & Walker on Hunter street, Atlanta, Ga.; and the said Albert Thomas said to the said George W. Miller that if the said Miller would just let him work the trade and not say anything, he, the said Thomas, would work it so that he would get the $200 for Miller for his property aforesaid, and that he, the said Thomas, would make $75 and the gray mare, and the said Albert Thomas repeated then and there that as soon as the trade was made, they would go right up to Walker's and get the money, to wit the $200, for his said property; the said Albert Thomas further representing to the said George W. Miller . . . that the lady referred to was kept by a rich white man in town, and that she was rich and could give a check for any amount of money, and damn her he would like to beat her"; that Miller, re-

lying and acting upon these representations and believing them to be true, was induced by Thomas to part with the possession of his property and make the exchange for the gray horses and gray mare upon the day and date aforesaid in Fulton county. Whereas, in truth, the horses were not worth $650, nor anything like that sum, the three horses being really not worth more than $63.50, and the lady to whom Thomas referred was a negro woman named Priscilla Ray, who is in thorough sympathy with Thomas in this entire transaction, and did aid and abet him therein ; and whereas said Walker nor any one else had offered to pay and was ready to pay $275 for the gray horses as represented by him he had done, nor has Miller received $200 for his property as aforesaid. And Thomas well knew at the time he made the several representations aforesaid to Miller, that they were not true, and they were made by him, Thomas, for the purpose of cheating and swindling, and did thereby cheat and defraud Miller out of his property, which was worth $200.

The transaction as shown by the testimony for the State was in substance the same as alleged in the accusation, except that in the proof the prosecutor was shown to have received $15 in the exchange, besides the two horses and the mare. There was a verdict of guilty, and the defendant made a motion for a new trial, which was overruled, and he excepted.

1, 2, 3, 4. The questions ruled upon in the 1st, 2d, 3d and 4th head-notes do not require further discussion.

5. It was contended that in order to make out the offence of cheating and swindling, the false representation must relate to a past or existing fact, and that the verdict was contrary to law and the evidence, because the representations upon which the prosecutor claimed to have acted related to something to be done in the future. The testimony, it is true, was conflicting as to

whether the accused, at the time of proposing the exchange, stated to the prosecutor that he had already sold the horses to Mr. Walker, and had sold them for $275, as charged in the accusation, or whether the statement was merely that he *could* sell them to Walker for that amount; but there was sufficient evidence to sustain the allegation on this point, and to show that the basis of the transaction and the inducement upon which the prosecutor acted in parting with his property was primarily the false representation of the accused that the horses were already sold to .Walker. This representation, in connection with the other facts shown by the proof, is enough to bring the case within the terms of the statute under which the accused was tried and convicted. (Code, §4595.) That the representation was as to a sale not completed by delivery, did not render it any less a representation as to a past fact than it would have been if it had referred to a sale altogether complete. Nor does it matter that a promise by the accused operated as a part of the inducement under which the prosecutor parted with his property; the consequence attached to the false representation was not overthrown by the promise. 2 Bishop, Crim. Law (7 ed.), §§424–427; 2 Whart. Crim. Law (9 ed.), §1174, and cases cited; 7 Am. & Eng. Enc of L. 714–716, 753, n.; Reg. *v.* West, 8 Cox Crim. Cas. 12; State *v.* Fooks, 21 N. W. Rep. (Iowa), 561; State *v.* Nichols, 1 Houst. Crim. Rep. 114.          *Judgment affirmed.*